**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILLIAM ROBERT HERRERA; MONA MOLINA HERRERA, Individually and on behalf of their minor child N.P.H.; WILLIAM RYAN HERRERA; PALMDALE LODGING, LLC, a California Limited Liability Company, *Plaintiffs-Appellants*, <br><br> v. <br><br> CITY OF PALMDALE; COUNTY OF LOS ANGELES; BUD DAVIS; GEORGE SCHNEIDER; ROB BRUCE; NARDY LOPEZ; MARK DYLER; ANNE AMBROSE; NOEL JAMES DURAN; JAMES PURTEE; SARA SHREVES; RAPOSAS; BLAKELY; ANTHONY BONELLI; MARK MILLER; MUNOZ; LEON; JACOBS; DANA; MYLES; SORROW; DIAZ; ARCIDIANCONO; DOLLENS; BRANDON; GALLAGHER; WALDEN; DOES, 1–10 inclusive, *Defendants-Appellees*. | No. 17-55761 <br><br> D.C. No. 2:16-cv-09453-MWF-FFM <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted December 6, 2018
Pasadena, California

Filed March 20, 2019

Before: Diarmuid F. O'Scannlain and Sandra S. Ikuta,
Circuit Judges, and George Carem Steeh,[*] District Judge.

Opinion by Judge O'Scannlain

**SUMMARY**[**]

**Civil Rights**

The panel affirmed in part and reversed in part the district court's order granting defendants' motions for abstention in an action brought pursuant to 42 U.S.C. § 1983 and the Fair Housing Act alleging that the City of Palmdale and the County of Los Angeles committed numerous violations in connection with assessing code violations on plaintiffs' motel property and evicting plaintiffs and their tenants from the motel.

When plaintiffs brought their suit in federal court, the City almost simultaneously filed a complaint in state court asserting that plaintiffs' hotel was a public nuisance and seeking the appointment of a receiver to take possession and

---

[*] The Honorable George Caram Steeh III, United States District Judge for the Eastern District of Michigan, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

control of the property. The district court found that abstention was proper under *Younger v. Harris*, 401 U.S. 37 (1971), and dismissed the claims for declaratory and injunctive relief, and stayed the claims for damages pending resolution of proceedings in the state action.

The panel first held that it had jurisdiction over the appeal from the district court's order granting the motions for abstention even though the district court merely stayed rather than dismissed the damages claims. The panel held that the state nuisance enforcement action brought by the City (1) was a civil enforcement proceeding within the scope of the *Younger* doctrine; (2) implicated important state interests; and (3) provided an adequate opportunity to raise the federal constitutional claims. The panel further concluded that because plaintiffs' request for declaratory relief in the district court would have the same practical impact as injunctive relief on the pending state proceeding as a result of the preclusive effect of the federal court judgment, *Younger* abstention was also appropriate as to such relief.

Addressing the claims for damages under § 1983 for violations of the First, Fifth, and Fourteenth Amendments and the Contract Clause of the Constitution and the Fair Housing Act, the panel held that success by the plaintiffs on such claims would invalidate the code enforcement proceeding, and *Younger* abstention was therefore appropriate as to those claims.

Finally, the panel held that the district court erred in abstaining from the § 1983 damages claim alleging violations of the Fourth Amendment. The panel held that the relief sought based on alleged Fourth Amendment violations simply did not meet the Court's requirement that the relief

have the practical effect of enjoining the state court proceeding. The panel stated that the Fourth Amendment claim must be severed from the other claims and that the district court should consider it on the merits upon remand.

## COUNSEL

Frank Alan Weiser (argued), Law Offices of Frank A. Weiser, Los Angeles, California, for Plaintiffs-Appellants.

John M. Fujii (argued) and Matthew R. Silver, Silver & Wright LLP, Irvine, California, for Defendant-Appellee City of Palmdale.

Ashlee Clark (argued), Gilbert M. Nishimura, and Andrew Charles Pongracz, Seki, Nishimura & Watase, LLP, Los Angeles, California, for Defendant-Appellee County of Los Angeles.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a district court may abstain from addressing claims that seek federal relief while a simultaneous action is ongoing in state court.

I

A

William ("Bill") Herrera and his wife, Mona Herrera, operate a 48-unit motel in Palmdale, California. The motel is owned by Palmdale Lodging, LLC, a privately owned company formed by Bill and Mona. The City of Palmdale ("City") licensed Palmdale Lodging to operate the motel. After purchasing the motel in June 2016, Bill, Mona, and Palmdale Lodging spent approximately $250,000 to upgrade and to renovate the motel, and contracted with Motel 6 to operate the motel as a franchise. They also evicted those whom they considered to be "problem tenants who had prior to their ownership and possession caused crime problems at the motel."

On November 17, 2016, the City obtained a civil inspection warrant to investigate suspected violations of the Palmdale Municipal Code, the California Building Standards Code, the California Health and Safety Code, and other laws. The warrant was executed on November 21, 2016. Bill and Mona allege that the inspection warrant was executed without notice and included a search of their personal residence, located within the motel, without their permission. They further claim that sheriffs from the County of Los Angeles ("County") held Bill and their two children

at gunpoint for an hour and a half during the inspection of their personal residence.

On December 13, 2016, the City issued a Notice and Order to Repair or Abate ("Notice and Order"), which identified more than 400 code violations on the motel property. The Notice and Order required the violations to be repaired or abated within thirty days, and ordered the Herrera family and all motel tenants to vacate the property within two days.

On December 15, 2016, the City and County closed the motel and evicted the Herrera family and all motel tenants. Bill and Mona contend that they were not afforded an opportunity to appeal the Notice and Order. Bill and Mona further contend that the City and County prevented them from doing "any work to upgrade or repair the motel for the alleged code violations" despite their requests to do so.

B

On December 21, 2016, Bill and Mona, individually and on behalf of their minor daughter, their son William Ryan Herrera, and Palmdale Lodging (collectively, the "Herreras") filed this federal civil rights action in the Central District of California against the City, County, and individual defendants, alleging violations under 42 U.S.C. § 1983 and the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, et. seq. ("the federal action"). A First Amended Complaint alleged numerous federal constitutional violations by the City, County, and City and County officials, and a disparate impact claim under the FHA. The Herreras requested declaratory and injunctive relief, monetary damages, and attorney's fees.

Almost simultaneously, the City filed a Nuisance Complaint in Los Angeles County Superior Court against Bill Herrera and Palmdale Lodging ("the state action"). The City sought, among other things, a declaration that the motel is a public nuisance, the appointment of a receiver to take possession and control of the property, and injunctive relief prohibiting the state-action defendants "from maintaining or allowing any public nuisances" and "requiring [them] to abate all violations of law" on the property.

In the federal action, the City filed a motion for abstention, or, in the alternative, a motion to dismiss. The County filed a nearly identical motion the next day. The Herreras opposed both motions. On May 16, 2017, the district court granted both motions, concluding that abstention was appropriate under *Younger v. Harris*, 401 U.S. 37 (1971). The district court therefore dismissed the claims for declaratory and injunctive relief in the federal action, and stayed the claims for damages pending resolution of proceedings in the state action.

The Herreras timely appeal, challenging the district court's order granting the motions for abstention. [1]

II

As a threshold matter, the City argues that our court lacks jurisdiction over the appeal from the district court order granting the motions for abstention because the district court

---

[1] The City's unopposed motion for judicial notice of the state court complaint, state court order appointing a receiver, and state court docket, and the County's two unopposed motions for judicial notice of the state action defendants' answer to the state court complaint and state action defendants' reservation of federal claims in the state action are GRANTED.

has not entered final judgment.  Specifically, the City argues that we are without jurisdiction over the appeal because the district court has merely stayed, rather than dismissed, the Herreras' damages claims, and thus it retains jurisdiction over such claims.

A

Under 28 U.S.C. § 1291, the Court of Appeals has jurisdiction over appeals from "final decisions of the district courts of the United States."  Generally, "[a] district court order abstaining under *Younger* and dismissing the case ends the litigation.  It is a final appealable order." *Confederated Salish v. Simonich*, 29 F.3d 1398, 1401 (9th Cir. 1994). Indeed, when a court abstains under *Younger*, claims for injunctive and declaratory relief are typically dismissed. *See Gilbertson v. Albright*, 381 F.3d 965, 975, 981 (9th Cir. 2004) (en banc).  However, our court has also recognized that, when a district court abstains from considering a *damages* claim under *Younger*, it must *stay*—rather than dismiss—the damages action until state proceedings conclude.  *See id.* at 984 ("[W]hen damages are at issue rather than discretionary relief, deference—rather than dismissal—is the proper restraint.  To stay instead of to dismiss the federal action preserves the state's interests in its own procedures, the federal plaintiff's opportunity to seek compensation in the forum of his choice, and an appropriate balance of federal-state jurisdiction.").  Pursuant to this rule, the district court dismissed the claims for declaratory and injunctive relief, and stayed the claims for damages pending resolution of the state court proceedings.

B

"[A] stay is not ordinarily a final decision for purposes of § 1291." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

*Corp.*, 460 U.S. 1, 10 n.11 (1983). However, a stay order may be "final for purposes of appellate jurisdiction" where the order puts the litigant "effectively out of court." *Id.* at 9; *see also Idlewild Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n.2 (1962). This is precisely what the stay of the Herreras' damages claims has effected here. "[T]he object of the stay is to require . . . an essential part of the federal suit to be litigated in a state forum." *Moses H. Cone*, 460 U.S. at 10 n.11. Yet such stay is "lengthy and indefinite," which creates "a danger of denying justice by delay." *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007); *see also id.* at 723 ("*Moses H. Cone* applies whenever there is a possibility that proceedings in another court could moot a suit or an issue, even if there is no guarantee that they will do so.").[2]

---

[2] We recognize that the district court has permitted the Herreras to reserve their stayed damages claims for litigation in federal court under *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 421–22 (1964). *England* protects a "litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims" from being compelled "to accept instead a state court's determination of those claims." *Id.* at 415. Although a district court order granting an *England* reservation of jurisdiction "is not a final judgment immediately appealable under 28 U.S.C. § 1291" because "[s]uch order does not end the litigation on the merits," *Confederated Salish*, 29 F.3d at 1406, the *England* reservation is not at issue on appeal here. The district court order granting *Younger* abstention is appealable under *Moses H. Cone*, and we see no reason why the Herreras' reservation of claims should preclude appellate review of the otherwise appealable order granting *Younger* abstention. *Cf. Confederated Salish*, 29 F.3d at 1406–07 (concluding that our court lacked jurisdiction over the appeal of the order granting *England* reservation, but nonetheless exercising jurisdiction over the appeal of the order granting abstention under *Railroad Commission of Texas v. Pullman*, 312 U.S. 496 (1941)). Here, the reservation simply provides insurance to the Herreras that they

Under *Moses H. Cone*, even the stay—the resolution *required* by our court when granting *Younger* abstention on damages claims—is effectively a final decision and thus the district court order is final for purposes of appellate review. *See also Parris v. Taft*, 630 F. App'x 895, 898 (11th Cir. 2015) ("Because the district court stayed the case until Mr. Parris's related state criminal proceedings were resolved, the order left him effectively out of court. Thus, the order is a final decision, and we have appellate jurisdiction."). We are satisfied that we have jurisdiction to review the district court order on appeal.

### III

Turning to the merits, the Herreras argue that the district court erred by abstaining under *Younger*.

*Younger* abstention is grounded in a "longstanding public policy against federal court interference with state court proceedings." *Younger*, 401 U.S. at 43. The Supreme Court has "identified two sources for this policy: the constraints of equity jurisdiction and the concern for comity in our federal system." *Gilbertson*, 381 F.3d at 970. Most importantly, *Younger* abstention permits federal courts to "preserve respect for state functions such that the national government protects federal rights and interests in a way that will not 'unduly interfere with the legitimate activities of the States.'" *Id.* (quoting *Younger*, 401 U.S. at 44).

A federal court may abstain under *Younger* in three categories of cases: "(1) parallel, pending state criminal proceedings, (2) state civil proceedings that are akin to

---

may litigate their stayed damages claims after state court proceedings have finished.

criminal prosecutions, and (3) state civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (internal quotation marks and citations omitted). First identified in *New Orleans Public Service, Inc. v. Council of New Orleans* ("*NOPSI*"), 491 U.S. 350 (1989), these three categories are known as the *NOPSI* categories. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013).

To warrant *Younger* abstention, a state civil action must fall into one of the *NOPSI* categories, and must also satisfy a three-part inquiry: the state proceeding must be (1) "ongoing," (2) "implicate important state interests," and (3) provide "an adequate opportunity . . . to raise constitutional challenges." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *see also ReadyLink*, 754 F.3d at 759. If the state proceeding falls into one of the *NOPSI* categories and meets the three *Middlesex* factors, a federal court may abstain under *Younger* so long as "the federal action would have the practical effect of enjoining the state proceedings." *ReadyLink*, 754 F.3d at 759.

## A

The Herreras first argue that the state nuisance proceeding does not fall into one of the *NOPSI* categories because it is not "a civil enforcement proceeding[] that is akin to a criminal prosecution."

The Supreme Court has held to the contrary, and recognized that a state nuisance proceeding may warrant *Younger* abstention from federal claims. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607 (1975). In *Huffman*, the Court considered the applicability of *Younger* abstention in

a federal § 1983 action where there was an ongoing state nuisance enforcement proceeding against the manager of an obscene film theater. *Id.* at 595–98. Explaining that "the proceeding is both in aid of and closely related to criminal statutes which prohibit the dissemination of obscene material," the Court determined that "[t]he propriety of federal-court interference with an Ohio nuisance proceeding must . . . be controlled by application of those same considerations of comity and federalism" at issue when the state proceedings are criminal in nature. *Id.* at 604, 607. Thus, the Court held that the district court should have abstained, unless an exception to *Younger* applied. *Id.* at 611.

In *NOPSI* itself, the Supreme Court cited *Huffman* to clarify that *Younger* abstention may apply "beyond state criminal prosecutions, to civil enforcement proceedings." *NOPSI*, 491 U.S. at 368; *see also Woodfeathers, Inc. v. Washington County*, 180 F.3d 1017, 1021 (9th Cir. 1999) ("Civil actions brought by a government entity to enforce nuisance laws have been held to justify *Younger* abstention."). And the Court recently reaffirmed such application of *Younger*:

> Our decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings akin to a criminal prosecution in important respects. Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.,* the party challenging the state action, for some wrongful act. In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. Investigations are

> commonly involved, often culminating in the filing of a formal complaint or charges.

*Sprint*, 571 U.S. at 79–80 (internal quotation marks and citations omitted).

The nuisance action pending in state court against Bill Herrera and Palmdale Lodging closely resembles the civil enforcement actions described in *Sprint*. The City, a state actor, obtained and executed an inspection warrant, and identified more than four hundred violations of State and local laws on the motel property. Such investigation by the City is characteristic of the state actions that warrant *Younger* abstention under *Sprint*. The City then issued a Notice and Order to Repair or Abate the violations, and, as described in *Sprint*, "initiate[d]" an action for nuisance abatement and receivership, alleging that the motel property "contains numerous violations of State and local laws and poses a severe life and health and safety hazard to any occupants, nearby residents, and the public." The state nuisance complaint requested, among other forms of relief: the appointment of a receiver to take possession and control of the property, an injunction preventing Bill Herrera and Palmdale Lodging from collecting rent or income from the property and from claiming any state tax deduction on the property, and imposition of civil penalties against Bill Herrera and Palmdale Lodging. In keeping with the objective of the enforcement actions described in *Sprint*, such relief would "sanction" the Herreras for their alleged failure to comply with state and local laws. The investigation, initiation, and requested sanctions of the proceeding here are therefore consistent with the enforcement actions described in *Sprint* and at issue in *Huffman*.

We are satisfied that the state nuisance enforcement action brought by the City against Bill Herrera and Palmdale Lodging is a civil enforcement proceeding within the scope of the *Younger* doctrine.

B

The Herreras next argue that, even if the state action falls within one of the *NOPSI* categories, *Younger* abstention is nonetheless inappropriate because two of the three *Middlesex* factors are not met.

1

Initially, the Herreras argue that the state proceeding does not implicate important state interests. The City disputes such argument, claiming that it has an important interest in eliminating public nuisances and enforcing local and state codes to protect the public from dangerous conditions. The state action sought to enforce health and safety provisions, and to abate public nuisances.

We have previously held that such nuisance actions implicate important state interests and thus satisfy this second *Middlesex* factor. *See, e.g.*, *Woodfeathers*, 180 F.3d at 1021 (holding that a state action enforcing ordinances declaring waste to be a nuisance implicated important state interests); *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 884 (9th Cir. 2011) (listing "a wide range of civil contexts," including nuisance abatement, in which abstention was "necessary to protect the state's unique interest in exercising its basic executive functions"). The Herreras offer no meaningful distinction between these cases and their own. Thus, the Herreras' argument to the contrary is foreclosed by our court's precedent, and we conclude that

the state nuisance proceeding at issue here implicates important state interests.

2

Next, the Herreras argue that the state proceedings do not provide an adequate opportunity to raise federal constitutional claims, as required by *Middlesex*. Specifically, the Herreras argue that (1) their alleged civil rights violations are "irrelevant" to the issue whether the motel is a public nuisance, and that (2) Mona Herrera and her children are unable to raise their civil rights claims because they are not parties to the state action. We address each argument in turn.

a

A federal court's exercise of *Younger* abstention does not turn on whether the federal plaintiff actually avails himself of the opportunity to present federal constitutional claims in the state proceeding, but rather whether such an opportunity exists. *See Juidice v. Vail*, 430 U.S. 327, 337 (1977) (explaining that plaintiffs "need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings, and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate" (citation omitted)). "[T]he burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claims.'" *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (second alteration in original) (quoting *Moore v. Sims*, 442 U.S. 415, 432 (1979)); *see also Lebbos v. Judges of Superior Court*, 883 F.2d 810, 815 (9th Cir. 1989).

The Herreras' argument that the federal action is "irrelevant" to the state action does not satisfy such burden,

and the Herreras have pointed to no other reason why the state action defendants could not raise their federal constitutional claims in the enforcement proceeding. The state proceeding is a civil action in Los Angeles County Superior Court over which the state court has general jurisdiction. According to the California Code of Civil Procedure, in such a proceeding, "[a] party against whom a cause of action has been asserted in a complaint or cross-complaint may file a cross-complaint setting forth . . . [a]ny cause of action he has against any of the parties who filed the complaint or cross-complaint against him." Cal. Code Civ. Pro. § 428.10. The Herreras have not demonstrated that state procedural law otherwise barred such a cross-complaint in the state action here.

Thus, the Herreras' first challenge to the adequacy of their opportunity to raise federal constitutional claims in the state action must fail.

b

The Herreras also urge that the state proceedings do not provide an adequate opportunity to Mona and her children to raise federal constitutional claims because they are not parties to the state action.

*Younger* abstention generally applies only where the federal plaintiffs are also defendants in the ongoing state proceeding. *See Benavidez v. Eu*, 34 F.3d 825, 832 (9th Cir. 1994). However, both the Supreme Court and our court have recognized that "there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975). In *Hicks v. Miranda*, 422 U.S. 332, 337–38 (1975), the Court considered a federal challenge brought

by a theater, its owner, and its employees to an ongoing state enforcement proceeding of a California obscenity statute. Although some of the federal plaintiffs were not parties to the state enforcement proceeding at the time the federal action was filed, the Court nonetheless invoked *Younger* abstention. *Id.* at 348. The Court explained that, because the claims of the federal plaintiffs would nonetheless interfere with the state case, the "same comity considerations appl[ied]" to warrant abstention. *Id.* at 349 (quoting *Allee v. Medrano*, 416 U.S. 802, 831 (1974) (Burger, C.J., concurring)). Because the parties' interests were "intertwined" with those of the state court defendants, *Younger* abstention was proper as to all federal plaintiffs. *Id.* at 348.

Likewise, our court has suggested that parties with "a sufficiently close relationship or sufficiently intertwined interests" may be "treated similarly for purposes of *Younger* abstention." *Canatella v. California*, 404 F.3d 1106, 1116 (9th Cir. 2005). We do not stand alone. Several of our sister circuits have upheld a decision to abstain under *Younger* where the parties to the federal and state actions were not identical, so long as their interests were sufficiently intertwined. *See, e.g.*, *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 81–82 (2d Cir. 2003) (considering whether legal interests were "sufficiently intertwined"); *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 881–82 (8th Cir. 2002) (considering whether interests are "closely related"); *Collins v. Kendall County*, 807 F.2d 95, 101 (7th Cir. 1986) (concluding that *Younger* abstention considerations applied equally where plaintiffs were "all related to the same business entity" and "share[d] the same interest in contesting the state litigation"); *Women's Cmty. Health Ctr. of Beaumont, Inc. v. Tex. Health Facilities Comm'n*, 685 F.2d 974, 981–82 (5th Cir. 1982)

(abstaining where interests were "so completely intertwined that the same *Younger* bar must apply to all").

The Herreras are all related to the same corporation, Palmdale Lodging. In fact, Mona—though not a named defendant in the state action—is a co-founder of state-defendant Palmdale Lodging. And the children, with their parents, reside at the motel which is the subject of the state action. Furthermore, the federal claims arise from a single proceeding to abate code violations at Palmdale Lodging's motel and the corresponding investigation. Such relationship goes beyond identity of interests; rather, the family members were allegedly deprived of their civil rights collectively during the investigation, and the ongoing nuisance proceeding related to the motel which Bill and Mona operate and at which the family resides. The federal claims of Mona and her children present the same risk of interference in the state proceeding as do the federal claims of Bill and Palmdale Lodging—indeed, all the federal plaintiffs seek the same relief from the state court proceedings. As in *Hicks*, the comity considerations raised by the federal claims of those not party to the state action are indistinguishable from those raised by the state defendants. The parties' interests are therefore sufficiently intertwined.

We are thus persuaded that the closely intertwined interests of Mona, the children, and the state defendants, Bill and Palmdale Lodging, warrant subjecting them all to the same *Younger* abstention considerations. The Herreras' second challenge to the adequacy of their opportunity to raise constitutional claims in the state action also fails.

C

Finally, the Herreras argue that the exercise of *Younger* abstention was improper because the relief sought in the

federal action would not "enjoin—or have the practical effect of enjoining—ongoing state proceedings." *ReadyLink*, 754 F.3d at 758. Specifically, the Herreras argue that the issues raised in the federal action are "wholly distinct from the state court question."

## 1

Alleging violations of their civil rights under § 1983 and the FHA, the Herreras request injunctive, declaratory, and monetary relief. Certainly the Herreras' request that the court enjoin the City from closing the motel and evicting the Herreras from their personal residence would enjoin directly the state action. Furthermore, the Supreme Court has "held that *Younger* applies to requests for declaratory relief because 'ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid.'" *Gilbertson*, 381 F.3d at 971 (quoting *Samuels v. Mackell*, 401 U.S. 66, 72 (1971)). Because the request for declaratory relief would have "the same practical impact as injunctive relief on a pending state proceeding as a result of the preclusive effect of the federal court judgment," *Gilbertson*, 381 F.3d at 975, *Younger* abstention is also appropriate as to such relief.

## 2

The Herreras' request for monetary relief is not so straightforward. Our court has recognized that "*Younger* principles apply to actions at law . . . because a determination that the federal plaintiff's . . . rights have been violated would have the same practical effect as a declaration or injunction on pending state proceedings." *Id.* at 968. "[T]o determine whether the federal plaintiff is entitled to damages," the district court often first decides

whether a violation of the plaintiff's civil rights has occurred, imposing the same intrusion as a declaratory judgment by the federal court. *Id.* at 979–80.

a

We first consider the Herreras' claims for damages under § 1983 for alleged violations of the First, Fifth, and Fourteenth Amendments and the Contract Clause of the Constitution, and under the FHA—in other words, all of their damages claims *except* those concerning the Fourth Amendment. Relief on such claims requires the district court to determine first whether violations of their civil rights have occurred in the course of the state enforcement proceeding, which would create a federal court judgment with preclusive effect over the ongoing state action. *See Gilbertson*, 381 F.3d at 978 ("Preclusion rules may be relevant to determining the practical effect of a federal court's relief."). For example, a holding by the district court that the Herreras are entitled to damages under § 1983 because City officials violated their Fifth Amendment rights would include a determination that the state action constituted a taking of property without just compensation. Plainly, such determination that the state proceeding is itself unconstitutional would interfere with the ongoing state enforcement action in the same way as would a declaratory judgment by the federal court. *Id.* at 979–80. Thus, like the claims for declaratory relief, resolution of the claims for damages under § 1983 for violations of the First, Fifth, and Fourteenth Amendments and the Contract Clause of the Constitution and the FHA would collectively "frustrate the state's interest in administering its judicial system, cast a negative light on the state court's ability to enforce constitutional principles, and put the federal court in the position of prematurely or unnecessarily deciding a question

of federal constitutional law." *Id.* at 980. Success by the Herreras on such claims would invalidate the code enforcement proceeding, and *Younger* abstention is therefore appropriate as to such claims.

b

Finally, we consider separately the Herreras' claims for damages under § 1983 for alleged violations of the Fourth Amendment. *Cf. AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1147 (9th Cir. 2007) (considering only whether the district court properly abstained under *Younger* from Count I, where the parties conceded that the district court properly dismissed Count II); *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002) (considering federal claim seeking enforcement of numerous provisions of a consent decree and noting that "[a] provision-by-provision *Younger* analysis appears prudent, however, for the fact that one provision may not be enforceable in light of *Younger* does not necessarily warrant voiding the entire consent decree . . . or dismissing the entire action"). Although the allegations of Fourth Amendment violations arise from investigations conducted in the course of the state enforcement action, we fail to see how determinations on such claims by the federal court would intrude in the ongoing state nuisance proceeding in the impermissible way that the Herreras' other damages claims would.

The Fourth Amendment claims arise from the defendants' search of the motel and subsequent entry onto the property to enforce the abatement proceedings, rather than from a challenge to the state proceeding as a whole or the state's allegedly discriminatory motivation in initiating such action. A ruling in favor of the Herreras on such claims would presumably not invalidate the basis for the code-violation enforcement proceedings, and the Fourth

Amendment claims themselves are not at issue in such proceedings. *See AmerisourceBergen*, 495 F.3d at 1151–52 (holding that *Younger* abstention from a breach of contract claim was improper where federal jurisdiction over the claim "would not have enjoined or in any way impeded the ongoing litigation" in state court where there was no "counterclaim in state court proceedings attempting to enforce" such contract claim). We may not abstain based on a mere "*potential* for conflict." *Id.* at 1151. Thus, unlike a determination that the civil proceeding itself is constitutionally deficient, a determination that a Fourth Amendment violation occurred and that the Herreras are entitled to monetary damages would not "have the same practical effect as a declaration or injunction on pending state proceedings." *Gilbertson*, 381 F.3d at 968.

We thus conclude that the district court erred in abstaining from the § 1983 damages claim alleging violations of the Fourth Amendment. We recognize that such decision raises the possibility of piecemeal litigation. Although related to the same sequence of events, the relief sought based on alleged Fourth Amendment violations simply does not meet our court's requirement that the relief have the practical effect of enjoining the state court proceeding. *See ReadyLink*, 754 F.3d at 758. Recalling our "oblig[ation] to decide cases within the scope of federal jurisdiction," *Sprint*, 571 U.S. at 72, this claim must be severed and the district court shall consider it on the merits upon remand.[3]

---

[3] The Herreras also argue that the district court erred in abstaining because an exception to *Younger* abstention for bad faith or other extraordinary circumstances applies. *See Middlesex*, 457 U.S. at 435; *San Jose Silicon Valley Chamber of Commerce Political Action Comm.*

## IV

In sum, we are satisfied that the district court abstained properly in every aspect, except with respect to the allegedly unreasonable search, which must be severed from the other claims.  On remand, the district court should consider the Herreras' claims for damages under § 1983 for alleged violations of the Fourth Amendment.[4]

The order of the district court is **AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**  The parties shall bear their own costs on appeal.

---

*v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008).  However, because the Herreras failed to raise this argument below, we consider this argument waived on appeal.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010).

[4] In light of our disposition in this case affirming on abstention grounds the district court's decision as to nearly all the Herreras' claims, we need not reach the City's alternative argument that we should affirm the district court's dismissal of the claims based on the Herreras' alleged failure to state a claim of municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  On remand, the district court may consider such argument with respect to the Herreras' claim for damages under § 1983 for alleged violations of the Fourth Amendment.